## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK POWELL,                           :
    **Plaintiff**                      :            No. 1:18-cv-02196
                                      :
                                      :            **(Judge Kane)**
                                      :            **(Magistrate Judge Arbuckle)**
ANDREW SAUL,                           :
Commissioner of                        :
Social Security,                       :
    **Defendant**                     :

## MEMORANDUM

Presently before the Court is Defendant the Commissioner of Social Security

("Defendant")'s motion to alter/amend judgment pursuant to Federal Rule of Civil Procedure

59(e).  (Doc. No. 30.)  For the reasons explained more fully below, the Court will deny the

motion.

## I.   BACKGROUND

On March 5, 2020, the Court issued an Order vacating Defendant's decision denying

Plaintiff Mark Powell ("Plaintiff")'s application for disability insurance benefits under Title II of

the Social Security Act after sustaining Plaintiff's objection to the Magistrate Judge's Report and

Recommendation regarding consideration of his lumbar radiculopathy by the Administrative

Law Judge ("ALJ").  (Doc. No. 28.)  In reaching such a conclusion, the Court reasoned, in

pertinent part, as follows:

> Upon consideration of the record in this case, including the ALJ's reasoning, the
> Report and Recommendation, and the above objection, the Court agrees with
> Plaintiff that the ALJ erred by failing to consider his lumbar radiculopathy and,
> accordingly, will sustain this objection and order that the case be remanded on
> this basis.  First, the record supports Plaintiff's contention that the ALJ neither
> considered Plaintiff's lumbar radiculopathy nor provided a reason for not
> considering it.  (Doc. No. 11-2.)  Additionally, the Court is persuaded by
> Plaintiff's arguments that reliance on [Salles v. Commissioner, 229 F. App'x 140
> (3d Cir. 2017)] is inapposite and that, rather, [Shedden v. Astrue, No. 4:10-cv-

2515, 2012 WL 760632 (M.D. Pa. Mar. 7, 2012)] is instructive in the instant matter. (Doc. No. 26 at 3).  In Shedden, the court acknowledged the pertinent authority supporting the proposition that "all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the [RFC]."  See Shedden, 2012 WL 760632, at *9.  Notably, the court reasoned that, as this proposition applied to the case before it, '[t]he record indicates that in addition to degenerative disc disease [the plaintiff] was diagnosed on several occasions with radiculopathy in the right lower extremity' and that '[t]he failure of the ALJ to find that condition as a medically determinable impairment, or to give an adequate explanation for discounting it, makes his decisions at steps two and four of the sequential evaluation process defective.'  See id.  In light of this authority, the Court will sustain Plaintiff's objection on this point and order that the case be remanded to the ALJ to conduct a new administrative hearing wherein Plaintiff's lumbar radiculopathy is considered.

(Doc. No. 28 at 4-5.)  On March 18, 2020, Defendant filed a motion to amend or alter the Court's judgment pursuant to Federal Rule of Civil Procedure 59(e), asserting that the Court's Order vacating the Commissioner's decision is legally erroneous.  (Doc. No. 30.)  The motion has been fully briefed (Doc. Nos. 31, 34) and is, therefore, ripe for disposition.

## II.   LEGAL STANDARD

A party may file a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  See Fed. R. Civ. P. 59(e).  A motion for reconsideration is a device of limited utility, which may not be used "to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant."  See Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citation omitted).  Rather, a court may alter or amend its judgment only where the party seeking reconsideration shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  See Max's Seafood Café v.

<u>Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999) (citing <u>N. River Ins. Co. v. CIGNA Reinsurance</u> <u>Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995)).  Reconsideration is an extraordinary remedy that should be granted sparingly.  <u>See</u> <u>D'Angio v. Borough of Nescopeck</u>, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

## III.    DISCUSSION

### A.    Arguments of the Parties

Defendant asserts that relief under Rule 59(e) is warranted "because of a manifest error of law in the Court's Order."  (Doc. No. 31 at 2.)  According to Defendant, the Court "relied on a district court decision that directly contradicts controlling SSA regulations and Third Circuit case law, including a decision issued one week prior to the Court's Order in this case[,]" <u>Orr v.</u> <u>Commissioner</u>, ___ F. App'x ___, 2020 WL 1018233 (3d Cir. Feb. 28, 2020), and stating that in <u>Orr</u>, the Third Circuit held that "because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome." (<u>Id.</u>)  Defendant raises two arguments in support of its contention that this Court erred in entering judgment in favor of Plaintiff: (1) that remand is not warranted as a result of the ALJ's alleged error in identifying all severe impairments at Step Two because "the ALJ evaluated all severe and non-severe impairments at the subsequent steps"; and (2) the ALJ's evaluation of Plaintiff's radiculopathy was proper "throughout the decision."  (<u>Id.</u> at 2, 7.)  In support of this first point, Defendant states that "this Court agreed with Plaintiff's reliance on <u>Shedden</u> . . . for the proposition that the ALJ must consider 'all of the medically determinable impairments[,] both severe and non-severe,' at step two and step four of the sequential evaluation process" and that reference to <u>Shedden</u> is inapposite because:

> The Court in <u>Shedden</u> incorrectly departed in one key way from the Third
> Circuit's holding in <u>Salles v. Commissioner</u>, 229 F. App'x 140 (3d Cir. 2017), a

case relied upon by the Commissioner and Magistrate Judge Arbuckle, as well as
SSA regulations and other Middle District of Pennsylvania cases that have
considered the same issue.  In <u>Salles</u>, the Third Circuit held that an ALJ's failure
to find any specific impairment severe at step two was harmless error as long as
the ALJ found at least one impairment severe at step two and the disability
analysis proceeded.  229 F. App'x 140, 145 n.2 ("Because the ALJ found in [the
plaintiff's] favor at Step Two, even if he had erroneously concluded that some of
her other impairments were non-severe, any error was harmless" (citing
<u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005)).

(<u>Id.</u> at 2-3) (alteration in original).  As stated by Defendant, "<u>Salles</u> is consistent with the Social

Security regulations[,]" which provide that "if an ALJ finds an impairment or combination of

impairments severe at step two, then the ALJ must consider the combined effects of all of a

claimant's impairments, severe and nonsevere, throughout the subsequent steps of the decision."

(<u>Id.</u> at 3) (citing 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2)).  Further, Defendant maintains that

"[t]he [c]ourt in <u>Shedden</u> . . . departed in one important way from <u>Salles</u> and SSA regulations by

finding that the ALJ must consider all severe and non-severe impairments at both step two and

step four" because "[u]nder <u>Salles</u> and SSA regulations, as long as the ALJ finds at least one

impairment severe at step two, proceeds to the subsequent steps in the sequential evaluation

process, and considers all severe and non-severe impairments in that analysis, any error at step

two is inconsequential."  (<u>Id.</u> at 4.)[1]

Moreover, Defendant states that "[a]ccordingly, the Court in [Shedden] added an

additional requirement to the regulations and prior case law without explanation. [Shedden] is an

outlier that appears to have been incorrectly decided."  (<u>Id.</u> at 5.)  According to Defendant, "[t]o

---

[1] Defendant adds that "[t]he <u>Shedden</u> finding is also inconsistent with the very cases the [c]ourt
in <u>Shedden</u> cited in support of the proposition that the ALJ must consider all of the medically
determinable impairments, both severe and non-severe, at step two and step four of the
sequential evaluation process.  (Doc. No. 31 at 4-5) (citing <u>Christenson v. Astrue</u>, Civil No. 10-
1192, Slip op. at 12 (M.D. Pa. May 18, 2011); <u>Little v. Astrue</u>, Civil No. 10-1626, slip op. at 19-
21 (M.D. Pa. Sept. 14, 2011); <u>Crayton v. Astrue</u>, Civil No. 10-1265, slip op. at 32-35 (M.D. Pa.
Sept. 27, 2011).

be sure, the Third Circuit reiterated its approach in <u>Salles</u> just one week before this Court issued its decision in the case at bar[,]" and "[i]n <u>Orr</u>, the plaintiff challenged the ALJ's step two finding, arguing that the ALJ should have included additional impairments[,]" where, like here, "the ALJ resolved step two in the plaintiff's favor and proceeded through the remaining steps of the sequential evaluation process." (<u>Id.</u> at 5-6.) Defendant further observes that, in that case, "[t]he Third Circuit held that, on those facts," the plaintiff could not "overcome [the fact that] because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome." (<u>Id.</u> at 6) (quoting <u>Orr</u>, 2020 WL 1018233 at *3). In conclusion, Defendant states that "<u>Orr</u> thus contradicts this Court's holding that a "remand is warranted 'for consideration of Plaintiff's lumbar radiculopathy at Steps Two and Four.'" (<u>Id.</u> at 6.)

In support of its second argument in favor of Rule 59(e) relief — that the ALJ evaluated Plaintiff's radiculopathy "throughout the decision" (<u>id.</u> at 7) — Defendant states that "[h]ere, the ALJ explained how he considered Plaintiff's radicular symptoms in the context of each step in the sequential evaluation process" because: "[f]or example, the ALJ discussed Plaintiff's back impairment and its related symptoms, or lack thereof, as part of the step three analysis"; and "[t]he ALJ accurately stated that Plaintiff's condition was not found to be related to nerve root compression" in that "he had minimal limitations on his lumbar range of motion, no sensory or reflex loss, and did not have a positive straight leg raise test for a period of 12 continuous months" (<u>id.</u> at 7-8. Further, Defendant asserts that: "[t]he ALJ also acknowledged Plaintiff's complaints of numbness, physical pain, and lower extremity weakness, which allegedly limited his ability to perform work-related activities; "[t]he ALJ discussed imaging evidence related to Plaintiff's back and noted that it did not show nerve root compression"; "[t]he ALJ also noted

that Plaintiff was regularly found capable of independent ambulation without an assistive device, and consistently exhibited full motor strength"; and "the ALJ discussed all of the medical and non-medical opinion evidence, which itself considered Plaintiff's radicular symptoms." (Id. at 8.)  Defendant maintains that, therefore, "the ALJ considered the symptoms that could be related to Plaintiff's radiculopathy and properly explained why he did not consider them to warrant more limiting restrictions in the RFC." (Id. at 8.)

In addition, Defendant states that "[i]mportantly, the characterization or 'name' given to Plaintiff's impairment is inconsequential.  Rather, the relevant inquiry is whether the ALJ ultimately considered the resultant symptoms and functional limitations." (Id. at 9) (citing Burnside v. Colvin, 197 F. Supp. 3d 705, 719 (M.D. Pa. 2015)).  In support of this point, Defendant states that, "[i]n Burnside, the district court considered a similar issue, determining that there was no error regarding the name given to an impairment, as the outcome of a Social Security case 'depends on the demonstration of functional limitations rather than the mere diagnosis or name of the impairment.'" (Id.) (citing Burnside, 197 F. Supp. 3d at 719).  According to Defendant, Burnside is instructive for purposes of the instant case because "[l]ike Burnside, the outcome of this case would be no different had the ALJ named Plaintiff's 'left lumbosacral radiculopathy' in addition to his lumbar degenerative disc disease, because the ALJ properly considered his alleged symptoms and resultant functional limitations as described above." (Id.) (citing Burnside, 197 F. Supp. 3d at 719).  Further, Defendant asserts that "[i]n the end, the ALJ's decision demonstrates that he evaluated Plaintiff's radicular complaints throughout his analysis in formulating the RFC finding that restricted Plaintiff to a reduced range of light work with a sit/stand option[,]" and "[t]his determination withstands the substantial evidence threshold that governs the factual findings in this case." (Id. at 9-10) (citing Biestek v.

6

Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019)).  Finally, Defendant argues that "Plaintiff has not

alleged – let alone established – any limitations from his purported radiculopathy that the ALJ

did not account for in his generous RFC finding[,]" and in light of the above arguments, the

Court should amend its previous Order so as to enter judgment in favor of Defendant.  (Id.)

In opposition, Plaintiff argues that Defendant's motion should be denied because: (1) "the

case relied upon is distinguishable from the precedent cited by the Commissioner"; and (2) "the

error made at Step Two was not harmless because the ALJ did not appropriately consider

Plaintiff's lumbosacral radiculopathy in the remainder of his decision."  (Doc. No. 32 at 1-2.)  As

to the former point, Plaintiff asserts that "[i]n Shedden, [the] [c]ourt found that the ALJ erred not

in his failure to find the plaintiff's radiculopathy to be severe at Step Two, but in his entire

failure to consider the plaintiff's radiculopathy at that Step[,]" which "caused the ALJ's

decisions at Step 2 and 4 to be defective because his determinations regarding the credibility of

the plaintiff's statements regarding the intensity, persistence, and limiting effects were 'based on

an incomplete and faulty analysis of all of [the plaintiff's] medically determinable

impairments.'"  (Id. at 2) (citing Shedden, 2012 WL 760632, at *9).  Plaintiff states that

"[s]imilarly, in the case at bar, the ALJ failed to consider Plaintiff's lumbosacral radiculopathy at

all at Step Two[,]" and Plaintiff rebuffs Defendant's argument that Shedden contradicts Third

Circuit precedent and applicable regulations on the basis that "Shedden is distinguishable from

Salles[because] [i]n Salles, the ALJ did not find each of the plaintiff's alleged impairments to be

severe at Step 2, but he did consider them all and explained his reasoning for his findings of non-

severity" and "[i]t appears that the ALJ in Orr did the same."  (Id. at 3.)  Plaintiff maintains that

"[t]his differs from the facts in Shedden and the current matter, where the ALJs did not consider

all of the plaintiffs' impairments at Step 2 and provided no reasoning for these omissions" and

"[t]herefore, the Court did not err in relying on . . . <u>Shedden</u>" because <u>Shedden</u> "is most analogous to the present matter." (<u>Id.</u>) As to the relationship between <u>Shedden</u> and the applicable Social Security regulations, Plaintiff states that "that they also support the [c]ourt's holding in <u>Shedden</u>" because "[t]he regulations require that an ALJ consider all impairments at Step Two of the sequential evaluation" and "[c]onsequently, the [c]ourt's remand for consideration of Plaintiff's radiculopathy at Step Two, and all of the subsequent steps, was appropriate." (<u>Id.</u> at 3-4) (citing 20 C.F.R. § 404.1523(c)).

In support of his second argument in opposition to Defendant's motion—that "[t]he ALJ's failure to consider Plaintiff's radiculopathy at Step Two was not harmless error because the ALJ did not appropriately consider this condition in the remainder of his decision"—Plaintiff disputes Defendant's assertion "that, because the ALJ proceeded beyond Step Two of the sequential evaluation, the relevant question before this Court becomes whether he appropriately accounted for Plaintiff's radiculopathy in the remainder of his decision[,]" and states that, rather, "the relevant question is, as discussed above, whether the ALJ considered all of Plaintiff's impairments at Steps Two and Four. Nevertheless, Plaintiff submits that the ALJ did not appropriately consider Plaintiff's radiculopathy in the subsequent steps." (<u>Id.</u> at 4.) Plaintiff argues "that the ALJ's failure to consider his lumbar radiculopathy materially affected the remainder of his determination in two ways." (<u>Id.</u>) First, Plaintiff states that "it caused the ALJ to find Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms to be inconsistent with the medical evidence[,]" which "was the crux of the court's decision in <u>Shedden</u> and is equally problematic in the present matter." (<u>Id.</u>) More specifically, Plaintiff asserts that "[i]n <u>Shedden</u>, the court found that the ALJ's determination at Step Four regarding the credibility of plaintiff's statements concerning the intensity, persistence, and

limiting effects of his symptoms was 'based on an incomplete and faulty analysis of all of [the plaintiff's] medically determinable impairments[,]'" and "[i]n the present matter, the ALJ did not consider Plaintiff's radiculopathy at Step 2, so his determination regarding Plaintiff's testimony was similarly based on 'an incomplete and faulty analysis' at Step Two." (Id. at 4-5) (quoting Shedden, 2012 WL 760632, at *9).

Second, Plaintiff argues that "the ALJ's RFC assessment does not appropriately account for Plaintiff's radiculopathy, as argued by the Commissioner" because "[t]he ALJ found that Plaintiff was capable of performing light work with the ability to transition from sitting to standing, as needed, every thirty minutes[,]" while "[g]enerally, the capacity to perform light work requires the ability to stand for six hours in an eight-hour day." (Id. at 5) (citing SSR 83-10). Plaintiff states that "[g]iven the inclusion of a "sit/stand" option, Plaintiff's RFC may only require him to stand for four hours" and "[n]evertheless . . . his radiculopathy would not allow for even that amount of time on his feet." (Id. at 5.) In support of this point, Plaintiff asserts that:

> Plaintiff testified in this matter that, due to the symptoms from his radiculopathy, he is significantly limited with regard to standing and walking. (R. 35-38.) His testimony is verified by a Functional Capacity Evaluation (FCE), during which Plaintiff was only capable of walking for three minutes before needing to sit and had significant limitation with static standing. (R. 422.) An Independent Medical Evaluation (IME) contained in the record found Plaintiff capable of only occasional standing and walking. (R. 328.) Clearly, if the ALJ had appropriately considered Plaintiff's lumbar radiculopathy at Step Two and at Step Four, he would not have found him capable of the amount of standing required by his FCE. In fact, [Plaintiff] submits that a limitation to sedentary work would have been expected. Such a limitation would have entitled Plaintiff to an award of benefits in this matter applying Medical-Vocational Guideline 201.14, given his age, education, and past work experience.

(Id. at 5-6.) Plaintiff states, in sum, that "this Court's original decision in this matter was correct. Shedden was the appropriate precedent on which to rely because it addresses the present

situation wherein the ALJ failed to even consider Plaintiff's lumbar radiculopathy at Step Two." (<u>Id.</u> at 6.)  Plaintiff adds that, "[n]evertheless, if the Court determines that it did err in relying on <u>Shedden</u>, remand would still be appropriate because the ALJ did not sufficiently consider Plaintiff's lumbar radiculopathy in his post-Step Two analysis" and, accordingly, urges the Court to deny Defendant's motion.  (<u>Id.</u> at 6.)

**B.      Whether Reconsideration of this Court's Decision Ordering Remand Is Warranted**

Upon review of Defendant's motion, the briefing submitted in connection therewith, and the governing law, the Court finds that Defendant has not met the exacting standard associated with the instant motion so as to warrant reconsideration of this Court's previous Order vacating the Commissioner's decision.  In order to demonstrate that such reconsideration is proper, Defendant must point to one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  <u>See</u> <u>Max's Seafood Café</u>, 176 F.3d at 677 (citing <u>N. River Ins. Co.</u>, 52 F.3d at 1218).  Because Defendant's motion does not raise the issue of new evidence, Defendant must show either an intervening change in the controlling law or the need to correct a clear legal error or prevent manifest injustice.  As explained below, the Court concludes that Defendant has demonstrated the existence of neither basis for reconsideration.

To the extent Defendant argues that <u>Orr</u> constitutes a change in controlling law on the basis that the Third Circuit issued its decision in <u>Orr</u> after the briefing on Report and Recommendation was completed but before this Court issued its decision on the Report and Recommendation, the Court concludes that Defendant's motion lacks merit.  Notably, the decision in <u>Orr</u> is non-precedential, and, therefore, while persuasive, does not constitute

controlling law.  See Orr, 2020 WL 1018233 (3d Cir. Mar. 2, 2020).  In addition, it bears noting

that in the briefing before Magistrate Judge Arbuckle, while Defendant argued the applicability

of Salles, Defendant never argued the import of the district court's decision in Orr that was

subsequently affirmed by the Third Circuit, with respect to Plaintiff's case.  (Doc. No. 19.)

Accordingly, the Court finds that the issuance of the Third Circuit's decision in Orr does not

constitute an intervening change in controlling law for purposes of Rule 59(e) relief.   Even if

Orr were a precedential decision, however, the Court finds that Orr is distinguishable, as

explained more fully below, and the Court, therefore, turns to Defendant's other asserted basis

for relief: that the Court made a clear error of law in ordering remand.

     As to the portion of Defendant's motion asserting that the Court erred in rejecting the

ALJ's Step 2 analysis and the ALJ's evaluation of Plaintiff's radiculopathy throughout his

decision, the Court finds that Defendant's motion lacks merit.  With regard to Defendant's

contention that "the ALJ's alleged error in identifying all severe impairments at Step Two is not

subject to remand because the ALJ evaluated all severe and non-severe impairments at the

subsequent steps," Defendant primarily disagrees with the Court's citation to Shedden.  (Doc.

No. 31 at 2.)  The Court, however, finds persuasive Plaintiff's assertion that the Court was

correct in looking to Shedden, rather than Salles, because:

> Shedden is distinguishable from Salles.  In Salles, the ALJ did not find each of the
> plaintiff's alleged impairments to be severe at Step 2, but he did consider them all
> and explained his reasoning for his findings of non-severity.  It appears that the
> ALJ in Orr did the same.  This differs from the facts in Shedden and the current
> matter, where the ALJ[] did not consider all of the plaintiff['s] impairments at
> Step 2 and provided no reasoning for these omissions.  Therefore, the Court did
> not err in relying on the precedent of Shedden in this matter, as it is the case that
> is most analogous to the present matter.

(Doc. No. 32 at 3) (emphasis added).  Moreover, the Court explicitly agreed with this contention

in its Order declining to adopt the Report and Recommendation, stating that:

[T]he Court agrees with Plaintiff that the ALJ erred by failing to consider his lumbar radiculopathy and, accordingly, will sustain this objection and order that the case be remanded on this basis.  First, the record supports Plaintiff's contention that the ALJ neither considered Plaintiff's lumbar radiculopathy nor provided a reason for not considering it.  (Doc. No. 11-2.)  Additionally, the Court is persuaded by Plaintiff's arguments that reliance on Salles is inapposite and that, rather, Shedden is instructive in the instant matter. (Doc. No. 26 at 3).  In Shedden, the court acknowledged the pertinent authority supporting the proposition that "all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the [RFC]." See Shedden, 2012 WL 760632, at *9.  Notably, the court reasoned that, as this proposition applied to the case before it, "[t]he record indicates that in addition to degenerative disc disease [the plaintiff] was diagnosed on several occasions with radiculopathy in the right lower extremity" and that "[t]he failure of the ALJ to find that condition as a medically determinable impairment, or to give an adequate explanation for discounting it, makes his decisions at steps two and four of the sequential evaluation process defective." See id.

(Doc. No. 28 at 4-5.)

The Court, therefore, agrees with Plaintiff's previous contention that in the instant case, "the ALJ[] did not consider all of the plaintiff['s] impairments at Step 2 and provided no reasoning for these omissions[,]" (Doc. No. 32 at 3) because a review of the ALJ's decision compels this conclusion (Doc. No. 11-2 at 18-24).  Moreover, Defendant has failed to counter the fact that, in the instant case, the ALJ simply failed to account for his omission of Plaintiff's radiculopathy.  (Doc. No. 31.)  Accordingly, Shedden is distinguishable from Salles—and by extension, Orr—and is the most applicable authority for purposes of the case at bar.  Compare Shedden, 2012 WL 760632, at *9 ("The record indicates that in addition to degenerative disc disease Shedden was diagnosed on several occasions with radiculopathy in the right lower extremity.  The failure of the administrative law judge to find that condition as a medically determinable impairment, or to give an adequate explanation for discounting it, makes his decisions at steps two and four of the sequential evaluation process defective."), with Salles, 229 F. App'x at 144-45 ("[T]he ALJ found in Salles's favor at Step Two, when he concluded that

her degenerative disc disease and monocular vision were severe.  As to Salles's HIV, depression, and visual problems with her right eye, the ALJ properly found these impairments to be non-severe.  Although Salles had testified to experiencing symptoms consistent with these ailments, <u>she does not dispute the Commissioner's observation that there was no medical evidence in the record before the ALJ that Salles had been diagnosed with or treated for these conditions</u>." (emphasis added)),[2] and <u>Orr</u>, 2020 WL 1018233, at *3 ("[Orr] claims that the ALJ erred in determining that certain of his impairments were not severe.  But even without finding that all of Orr's impairments were severe, the ALJ concluded that Orr still satisfied Step Two.  The ALJ then proceeded to Step Three. Orr cannot overcome that fact: because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome.").[3]  The Court reaffirms its reasoning from its Order vacating the Commissioner's decision herein, and to the extent Defendant has attempted to reassert its arguments in favor of <u>Salles</u> over <u>Shedden</u>, the Court rejects those arguments because they are inappropriate for purposes of a motion for reconsideration.  <u>See, e.g.</u>, <u>Ogden</u>, 226 F. Supp. 2d at 606 ("A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." (quoting <u>Abu–Jamal v. Horn</u>, No. 99-cv-5089, 2001 WL 1609761, at *9 (E.D. Pa. Dec. 18, 2001))).[4]

---

[2] The fact that the plaintiff in <u>Salles</u> was not diagnosed with certain conditions is important for purposes of the instant case because, unlike the plaintiff in <u>Salles</u>, Plaintiff in this case "has been diagnosed with and treated for lumbosacral radiculopathy."  (Doc. No. 26 at 3.)

[3] Notably, as Plaintiff observes, in <u>Orr</u>, the question of whether the ALJ failed to consider <u>all</u> impairments regardless of whether they were ultimately deemed severe was not raised.  (Doc. No. 32 at 3.)

[4] Additionally, as to Defendant's argument that <u>Shedden</u> "is an outlier that appears to have been incorrectly decided" (Doc. No. 31 at 5), the Court finds this argument unavailing because:

Turning to Defendant's second alleged basis for legal error—that "The ALJ Properly Evaluated Plaintiff's Radicular Symptoms Throughout the Decision"—the Court finds that Defendant's motion lacks merit as to this point, as well.  As noted supra, the Court finds it problematic that the ALJ did not provide a reason for omitting consideration of Plaintiff's radiculopathy at Step Two (Doc. No. 11-2 at 18-24), and the remainder of the ALJ's decision similarly lacks any discussion of the radiculopathy so as to render this omission a harmless error. Notably, in its brief in support of the instant motion, Defendant states that "[a]s Magistrate Judge Arbuckle correctly concluded, '[w]hile the ALJ did not explicitly make a finding as to Plaintiff's left lumbosacral radiculopathy in his Opinion, it is apparent from the record that he considered Plaintiff's lumbosacral symptoms through all stages of analysis.'"  (Doc. No. 31 at 7) (citing Doc. No. 24 at 11).  Defendant states further that "[r]adiculopathy 'describes a range of symptoms produced by the pinching of a nerve root in the spinal column'" and that "[h]ere, the ALJ explained how he considered Plaintiff's radicular symptoms in the context of each step in the sequential evaluation process" by discussing, for example, Plaintiff's "back impairment and its related symptoms[,]" as well as "complaints of numbness, physical pain, and lower extremity weakness[,]" and "[a]ccordingly, the ALJ considered the symptoms that could be related to Plaintiff's radiculopathy and properly explained why he did not consider them to warrant more limiting restrictions in the RFC."  (Id. at 8.)

The Court recognizes that the ALJ need not use the exact name of a claimant's condition or diagnoses in order for the analysis to be legally sound.  See Burnside, 197 F. Supp. 3d at 720 (stating that "the ALJ's opinion considered all impairments of record and detailed the limitations

---

(1) Shedden is distinguishable from the authority cited by Defendant, as discussed supra; and (2) the mere assertion that Shedden is an "outlier" is insufficient to demonstrate a "clear error of law" for purposes of relief under Rule 59(e).

resulting from the impairments at subsequent steps" and that "[r]egardless of the characterization of Plaintiff's cervical spine condition, the ALJ's determination of Plaintiff's RFC acknowledged Plaintiff's symptoms and functional impairments that resulted from Plaintiff's cervical spine condition"). The Court finds, however, that the ALJ's apparent lack of discussion of Plaintiff's radiculopathy is significant. Specifically, the Court finds persuasive Plaintiff's position that, like in <u>Shedden</u>, where "the court found that the ALJ's determination at Step Four regarding the credibility of plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms was 'based on an incomplete and faulty analysis of all of [the plaintiff's] medically determinable impairments[,]'" the ALJ here " did not consider Plaintiff's radiculopathy at Step 2, so his determination regarding Plaintiff's testimony was similarly based on 'an incomplete and faulty analysis' at Step Two." (Doc. No. 32 at 5) (alteration in original). Moreover, while Defendant notes that the ALJ made reference to "back impairment and its related symptoms[,]" and "complaints of numbness, physical pain, and lower extremity weakness[,]" which can be related to lumbar radiculopathy, it bears noting that in the relevant portion of the ALJ's decision discussing those points, the ALJ made reference to these complaints specifically with regard to Plaintiff's "congenital right leg and foot deformity and lumbar degenerative disc disease." (Doc. No. 11-2 at 20.) Accordingly, the Court finds that the ALJ did not simply fail to cite radiculopathy in his opinion, but rather, failed to consider it such that remand is warranted. Because Defendant has failed to demonstrate the presence of a clear error of law or manifest injustice resulting from this Court's Order vacating the Commissioner's decision, the Court will deny Defendant's request for relief under Rule 59(e).

## IV.    CONCLUSION

Based on the foregoing, the Court will deny Defendant's motion to amend/correct pursuant to Federal Rule of Civil Procedure 59(e).  (Doc. No. 30.)  An appropriate Order follows.